AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 418** |
| UNITED STATES OF AMERICA | <u>**SEALED COMPLAINT**</u> |
| v. | Violations of 18 U.S.C. §§ 666 and 1951 |
| DENISE NEWBY-BOVIAN, | COUNTY OF OFFENSE:<br>NEW YORK |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

DELCINE DOSCHER, being duly sworn, deposes and says that she is a Special Investigator with the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for the New York City Housing Authority ("NYCHA-OIG"), and charges as follows:

### COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1. From at least in or about January 2017 through at least in or about August 2022, in the Southern District of New York and elsewhere, DENISE NEWBY-BOVIAN, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2017 through 2022, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, NEWBY-BOVIAN solicited and accepted a total of at least approximately $37,700 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $137,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

### COUNT TWO
### (Extortion Under Color of Official Right)

2. From at least in or about January 2017 through at least in or about August 2022, in the Southern District of New York and elsewhere, DENISE NEWBY-BOVIAN, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, NEWBY-BOVIAN, under color of official right, obtained

money from NYCHA contractors, with their consent, that was not due NEWBY-BOVIAN or her office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3. I am a Special Investigator with the NYC DOI NYCHA-OIG, and I have been personally involved in the investigation of this matter. I have been employed by NYC DOI since 2020. I and other members of the investigative team, which includes agents from NYC DOI, the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5. As set forth in more detail below, there is probable cause to believe that DENISE NEWBY-BOVIAN, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at NYCHA developments, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

    a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

    b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2017 through 2022, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

    c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement

2

transactions "in a manner providing full and open competition." As such, goods and services must typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

    d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

    e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

    f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may ***not***: . . .

> • Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.
>
> • Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .
>
> • Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

3

  • Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as employees or in connection with the actions or duties of any other employee of NYCHA.

  • Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

  • Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

### NEWBY-BOVIAN'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of DENISE NEWBY-BOVIAN, the defendant:

  a. From at least in or about August 2001 through at least in or about April 2019, NEWBY-BOVIAN was employed as an assistant superintendent at Taft Houses, a NYCHA development located in New York, New York.

  b. From at least in or about April 2019 through at least in or about March 2023, NEWBY-BOVIAN was employed as a superintendent at Chelsea Addition-Elliot Houses ("Chelsea Houses"), a NYCHA development located in New York, New York.

### NEWBY-BOVIAN'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-5" and "CW-7")[2] who has performed work at NYCHA's Chelsea Houses, among other developments,[3] I have learned the following, in substance and in part:

---

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-5," "CW-7," and "CW-24" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-5 and CW-7 have provided information to law enforcement pursuant to proffer agreements and have testified in the grand jury pursuant to immunity orders. As referenced below, CW-5 and CW-7 have worked together for multiple years and still communicate with each other socially. During this investigation, CW-5 and CW-7 were at all times interviewed separately from each other and neither was present when the other made the statements described herein, and they were instructed by law enforcement not to discuss with each other the contents of their interviews or their grand jury testimony in connection with this investigation.

4

        a.      Since at least in or about 2018, CW-5 and CW-7 performed contracting work for NYCHA with particular contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

        b.      CW-5 and CW-7 were awarded approximately seven no-bid contracts (all of which are listed in NYCHA records as "closed," indicating a NYCHA employee approved the completed work) at Chelsea Houses from in or about April 2022 through in or about August 2022, during the time in which DENISE NEWBY-BOVIAN, the defendant, served as a superintendent at that NYCHA facility. CW-5 had been referred to NEWBY-BOVIAN by a superintendent at Saint Nicholas Houses (the "Saint Nicholas Superintendent") to whom CW-5 also paid money in exchange for no-bid contracts.[4] The Saint Nicholas Superintendent told CW-5, in substance and in part, that the Chelsea Houses superintendent was a friend of the Saint Nicholas Superintendent.[5]

        c.      NEWBY-BOVIAN subsequently called CW-5 and told CW-5, in substance and in part, that CW-5 needed to have the "same deal" with NEWBY-BOVIAN that CW-5 had with the Saint Nicholas Superintendent, which meant that CW-5 and CW-7 would have to pay 30% of the contract price to NEWBY-BOVIAN in exchange for no-bid purchase order contracts. From in or about April 2022 through in or about August 2022, CW-5 paid NEWBY-BOVIAN approximately 30% of the value of the contract for approximately every no-bid contract they were awarded by NEWBY-BOVIAN, including one contract worth approximately $5,000, one contract worth approximately $8,000, and five contracts each worth approximately $10,000.[6]

        d.      CW-5 and CW-7 understood, based on their interactions with NEWBY-BOVIAN and with other NYCHA employees who similarly required payments for work, that if CW-5 and CW-7 did not make payments to NEWBY-BOVIAN, they would not be awarded additional no-bid contracts for work at Chelsea Houses.

        e.      On or about July 20, 2023, CW-5 reviewed photobooks containing a photograph of NEWBY-BOVIAN among photographs of dozens of other individuals. CW-5 identified the photograph of NEWBY-BOVIAN as the superintendent at Chelsea Houses to whom CW-5 had made payments in exchange for no-bid contracts from NYCHA.[7]

---

[4] The Saint Nicholas Superintendent is being charged simultaneously with bribery and extortion offenses related to his receipt of money for work.

[5] CW-5 recalled that the Saint Nicholas Superintendent told CW-5 that the Saint Nicholas Superintendent used to work at Chelsea Houses. NYCHA Human Resources records do not reflect that the Saint Nicholas Superintendent worked at Chelsea Houses. However, they show that the Saint Nicholas Superintendent and NEWBY-BOVIAN worked together at Taft Houses, another NYCHA development, from in or about January 2015 through in or about June 2017.

[6] Like CW-5, CW-7 recalled that CW-5 paid NEWBY-BOVIAN approximately $3,000 for the contracts that were each worth approximately $10,000, and approximately $1,500 for the contracts that were each worth approximately $5,000.

[7] CW-5 did not remember NEWBY-BOVIAN's name at the time that CW-5 identified the photograph of NEWBY-BOVIAN. In an earlier meeting with law enforcement on or about February 9, 2023, CW-5 stated that NEWBY-BOVIAN's name might be something like "Nancy," but CW-5 was not sure.

    f. CW-7—who submitted the proposals for the work that CW-5 and CW-7 performed at Chelsea Houses—recalled that the name of the Chelsea Houses superintendent whom CW-5 paid in exchange for no-bid contracts awarded to CW-5 and CW-7 was "Denise N." However, CW-7 never met NEWBY-BOVIAN; CW-5 was the person who handed the cash payments to NEWBY-BOVIAN.[8] Nevertheless, CW-7 knew that CW-5 was paying NEWBY-BOVIAN in exchange for no-bid contracts at Chelsea Houses because CW-5 and CW-7 typically went together to a bank branch location to withdraw cash before going to Chelsea Houses, where CW-5 paid NEWBY-BOVIAN while CW-7 remained in the car.

    9. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-24"),[9] who has performed work at NYCHA's Taft Houses and Chelsea Houses, among other developments, I have learned the following, in substance and in part:

    a. Since in or about 2016, CW-24 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

    b. CW-24 began performing no-bid purchase order work at Taft Houses in or about January 2016. CW-24 was awarded at least approximately 35 no-bid contracts at Taft Houses from in or about January 2016 through in or about March 2019, during the time in which DENISE NEWBY-BOVIAN, the defendant, served as an assistant superintendent at that NYCHA facility. From in or about January 2017 through in or about December 2018, CW-24 paid NEWBY-BOVIAN between approximately $1,000 and $1,500 per contract in cash for multiple no-bid contracts CW-24 received from NEWBY-BOVIAN at Taft Houses, which were typically each worth between approximately $4,000 and $5,000. CW-24 recalled that NEWBY-BOVIAN knew that the Saint Nicholas Superintendent—who was then the superintendent at Taft Houses—was requiring CW-24 to pay the Saint Nicholas Superintendent in exchange for contracting work. NEWBY-BOVIAN informed CW-24, in substance and in part, that she would also require CW-24 to pay her money in exchange for NEWBY-BOVIAN awarding no-bid contracts to CW-24.

    c. In or about April 2019, NEWBY-BOVIAN was assigned to Chelsea Houses as superintendent. CW-24 began performing no-bid purchase order work at Chelsea Houses in or about April 2019. CW-24 was awarded at least approximately 14 no-bid contracts at Chelsea Houses from in or about April 2019 through in or about March 2020, during the time in which NEWBY-BOVIAN served as a superintendent at that NYCHA facility. During that time, CW-24

---

[8] Indeed, on or about July 20, 2023, in a different meeting than the one with CW-5, CW-7 reviewed photobooks containing a photograph of NEWBY-BOVIAN, among photographs of dozens of other individuals, but did not identify the photograph of NEWBY-BOVIAN, nor did CW-7 identify any other photographs as appearing to be the individual CW-7 knew as "Denise N."

[9] CW-24 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement pursuant to an agreement to extend the same immunity protections to the interview. CW-24 has never worked at any of the contracting companies where CW-5 and CW-7 worked. CW-24 was interviewed separately from CW-5 and CW-7 and instructed by law enforcement not to discuss the substance of the interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-24 knows CW-5 or CW-7.

paid NEWBY-BOVIAN between approximately $1,000 and $1,500 per contract in cash for approximately all of the no-bid contracts CW-24 received from NEWBY-BOVIAN at Chelsea Houses, which were typically each worth approximately $5,000.

   d. CW-24 understood, based on CW-24's interactions with NEWBY-BOVIAN and with other NYCHA employees who similarly required payments for work, that if CW-24 did not make payments to NEWBY-BOVIAN, CW-24 would not be awarded additional no-bid contracts for work at the developments where NEWBY-BOVIAN worked.

   e. On or about November 29, 2023, CW-24 reviewed photobooks containing a photograph of NEWBY-BOVIAN among photographs of dozens of other individuals. CW-24 identified the photograph of NEWBY-BOVIAN as someone who looked like "Denise Newby" at Taft Houses and Chelsea Houses, the NYCHA employee to whom CW-24 had made payments in exchange for no-bid contracts from NYCHA.

  10. Based on my review of financial records for DENISE NEWBY-BOVIAN, the defendant, and a financial analysis of such records, I have learned the following:

   a. Between in or about January 2016 and in or about October 2023, NEWBY-BOVIAN made a large amount of cash deposits into two particular bank accounts ("Account-1" and "Account-2"). Specifically, she made approximately 266 cash deposits of $100 or more, totaling over $378,000.

   b. NEWBY-BOVIAN's cash deposits into Account-1 include deposits during the time periods when CW-5, CW-7, and CW-24 paid her between approximately $1,000 and $1,500 per no-bid contract and include numerous deposits in multiples of $100. Specifically, NEWBY-BOVIAN made at least approximately 14 deposits of exactly $1,000; at least approximately four deposits of exactly $1,200 or $1,400; and at least approximately four deposits of exactly $1,500. In addition, NEWBY-BOVIAN made at least approximately 17 deposits in multiples of $100 that were greater than $2,000.

   c. From in or about June 2017 through in or about June 2022, nine other cash deposits in multiples of $100 were made into two particular bank accounts belonging to NEWBY-BOVIAN and another individual ("Account-3") and a bank account belonging to NEWBY-BOVIAN and two other individuals ("Account-4"), totaling approximately $4,300.

   d. The cash deposits into Account-3 and Account-4 include deposits during the time periods when CW-5, CW-7, and CW-24 paid NEWBY-BOVIAN between approximately $1,000 and $1,500 per no-bid contract. For example, in or about June 2022, exactly $1,000 was deposited into Account-2.

7

WHEREFORE, I respectfully request that a warrant be issued for the arrest of DENISE NEWBY-BOVIAN, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

_Delcine Doscher (by VF with permission)_
DELCINE DOSCHER
Special Investigator
New York City Department of Investigation,
Office of the Inspector General for NYCHA

Sworn to me through the transmission of
this Complaint by reliable electronic
means this  31  day of  January  , 2024.

_____
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York